UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 JUL -3 AM 9:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 03 2000

| | |
|---|---|
| ELLEN GAYLE MOORE, FANNIE MCCONNELL, SPENCER WILLIAMS, and ANITA BOWERS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) CV-99-BU-3262-S ) |
| vs. | ) ) |
| LIBERTY NATIONAL INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

## Memorandum Opinion

Now pending is a motion to alter or amend the judgment of the Court and for leave to file an amended complaint filed by Ellen Gayle Moore ("Moore"), Fannie McConnell ("McConnell"), Spencer Williams ("Williams"), and Anita Bowers ("Bowers") on April 24, 2000. In that motion, the Plaintiffs seek to have this Court (1) permit them to amend their complaint in order that they may surmount any challenge by Liberty National Insurance Company ("Liberty National") to their claims grounded in the statute of limitations and (2) reinstate their action by amending its earlier order dismissing their section 1981 claims as time-barred and dismissing their remaining state law claims for lack of original jurisdiction. Liberty National responds that this Court should disallow the Plaintiffs an amended complaint and that it should not depart from its earlier order dismissing the action.

## Background

Moore, McConnell, Williams and Bowers filed their initial complaint on , 1999, alleging a systematic, institutional practice of race discrimination in the provision of industrial life insurance to African-Americans, lasting from the early 1940's into the present. This ongoing practice, attributed to Liberty National and its predecessor, subsidiary, or acquired companies, formed the foundation of the Plaintiffs' complaint, supporting claims under the section 1 of the Civil Rights Act of 1866 prohibiting discrimination in contractual relations, most recently amended by the Civil Rights Act of 1991, and codified at 42 U.S.C. § 1981, and a host of state law claims, brought only on the named Plaintiffs' behalf, but on behalf of a nationwide class of African-American purchasers of Liberty National's industrial insurance products. Liberty national responded to the complaint by filing a motion for more definite statement on January 3, 2000; the motion was denied by the Court on the following day. On the 14th of January, 2000, the earlier motion of Liberty national was succeeded by a motion to dismiss the Plaintiffs' complaint. The Court denied the second- pre-answer motion, stating that the matters raised in it should have accompanied the earlier motion for more definite statement. An answer was filed by Liberty National on January 27, 2000, contemporaneous with a motion for judgment on the pleadings that reiterated the grounds for dismissal contained in the motion to dismiss. The motion was granted by the Court, which determined that the Plaintiffs had failed to overcome a timeliness bar posed by Alabama's two year statute of limitations to their federal section 1981 claims. The section 1981 claims were dismissed, with prejudice, and the state-law claims were dismissed, without prejudice for the Plaintiffs to proceed in state court.

Hoping to revive their case in federal court, the Plaintiffs moved for reconsideration of the motion for judgment on the pleadings and for the opportunity to file an amended complaint. The amended complaint that the Plaintiffs propose to file in place of the original complaint purports to repair the pleading deficiencies that caused the Court to earlier dismiss the action, first, by adding allegations tending to demonstrate that the Plaintiffs had no

knowledge of the racially discriminatory practices of Liberty National until shortly prior to the filing of this action and second, by adding to their complaint another theory of recovery under the provisions against discrimination in the maintenance of property under section 1 of the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1982.

In response to letters requesting oral argument, the Court held a hearing on June 20, 2000, to hear argument on the matters raised by the parties. That argument was informative, clarifying many questions of concern to the Court.

Much of the proposed amended complaint is unchanged from the original complaint; factual allegations, both broad and particular, remain as they were in the prior complaint. This being so, the Court need not recount many of those allegations in detail here, as they are canvassed in its earlier order dismissing this action. Rather, the Court confines its account of the allegations expressed in the proposed amended complaint to the general claims and their history.

As a putative class action, this case is brought by Moore, McConnell, Williams, and Bowers on behalf of all African-Americans who purchased industrial life insurance policies from Liberty National or any of its predecessor, subsidiary or acquired companies.[1] According to the Plaintiffs, for nearly sixty years, Liberty National sold to African-Americans, including themselves, industrial life insurance in which the proportion of premiums to cash value and benefits was greater than the proportion for similarly situated white individuals — that is, the premiums on each industrial life insurance policy sold to an African-American were realized in a lower cash value or benefit amount than would have been the case were the same premiums paid by a white individual. The sale of these allegedly discriminatory premiums was

---

[1] The term "industrial life insurance" is commonly applied to small insurance policies purchased mainly by working-class individuals so that upon their deaths a funeral can be afforded by their relatives. "Industrial Life Insurance is a life insurance product with relatively low face value which is typically, although not always, less than $ 20,000, and premium payments which are intentionally designed to appear to the policy holder to be modest premiums." Plaintiffs' First Amended Class Action Complaint at ¶ 9. As employed by the Plaintiffs, the term "industrial life insurance" has a broader reach than it does in common usage, covering, in addition to burial insurance, any life insurance and health and accident insurance, the value of which was calculated, at least in part, on the basis of race.

accomplished through the use of debit routes, territories assigned to agents of Liberty National who would collect premiums and encourage the purchase of more discriminatorily-priced insurance products.

Central to the Plaintiffs' motion for reconsideration is an account contained in the proposed amended complaint attempting to explain why the Plaintiffs, and allegedly all purported class members, were unaware of the Defendant's purportedly discriminatory rate setting policies. The Plaintiffs assert that, while the Defendant calculated policy rates based upon whether a purchaser of insurance was African-American or white, it would intentionally disguise the basis of its rate-setting through the use of neutral-seeming descriptions of those rates: Liberty national employed the term "standard rates" to refer to insurance rates applicable to African-Americans and the term "premium rates" to refer to insurance rates available only to white individuals. Thus, an African-American, when sold an insurance policy, would be told that the proportion of premiums to benefits in the policy was determined according to the "standard" rate, rather than that her insurance rates were tied to her race. In addition, Liberty National allegedly encouraged its agents to sell discriminatory policies to African-Americans, first, by instructing those agents not to reveal to African-American customers that they were charged higher rates than whites and second, by tying commissions to the type and amount of insurance sold. Because a revelation that rates varied on the basis of race would decrease an agent's African-American customers, Plaintiffs allege, each agent had a disincentive to reveal that the pricing of the policies was discriminatory. Finally, the Plaintiffs aver that Liberty National, after ceasing to make explicit, race-based distinctions among individuals in setting policy rates, nonetheless continued to sell racially-discriminatory policies by including in the calculation of policy rates factors often directly correlated with race, such as employment in certain occupations or residence in "undesirable" neighborhoods. Plaintiffs claim that they did not learn of these practices of Liberty National until shortly before the filing of this action and, in any case, less than two years before the action was filed, though they do not specify a particular date on which each named Plaintiff discovered the allegedly discriminatory manner in which insurance rates were set.

## Contentions & Analysis

Liberty National first contends that the Court should not permit the proposed amendment to the Plaintiffs' complaint because, even if amendment is permitted, the claims contained in the amended complaint would still run afoul of the statute of limitations. Regarding its argument that the statute of limitations would act as a bar, even to the proposed amended complaint, Liberty National contends, one, that nothing in the proposed amended complaint changes the date on which the Plaintiffs' section 1981 claims accrued and that the addition of the section 1982 claims to their case does not fix the Plaintiffs' timeliness problem because the Plaintiffs' claims under section 1982 accrued at the same time as the section 1981 claims. Next, Liberty National contends, nothing in the proposed amended complaint requires the Court to revisit its determination that the Plaintiffs' federal law claims arise from a continuing violation allowing them to avoid the statute of limitations bar. Liberty National argues, three, that because, in their proposed amended complaint, the Plaintiffs fail to adequately plead fraudulent concealment in compliance with Federal Rule of Civil Procedure 9(b), the Plaintiffs are not entitled to argue that their claims were tolled until recently discovered.

The remaining arguments against amendment are drawn from Liberty National's motion for judgment on the pleadings, incorporated by reference into Liberty National's opposition to the Plaintiffs' motion for reconsideration. Only four of the arguments in that motion have particular relevance to the issue of whether amendment would be futile, defeating reinstatement of the Plaintiffs' case. The remainder of Liberty National's arguments are not directed at eradicating all of the Plaintiffs' claims, only parts thereof, and, as such, have no direct bearing on the propriety of amendment and reinstatement of the Plaintiffs' case. In the briefs filed in support of its motion for judgment on the pleadings, Liberty National argues that the Plaintiffs' claims, first, are barred under the Alabama common law rule of repose and, second, are barred by the equitable doctrine of laches. Third, Liberty National asserts that the

McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which limits the application of federal law to certain state regulations of insurance, prohibits the Plaintiffs' section 1981 and 1982 claims. In its fourth argument against permitting amendment drawn from the motion to dismiss, Liberty National argues that this Court should abstain from deciding this case under the *Burford* abstention doctrine.

While the remaining arguments of Liberty National do not bear on the propriety of amendment, they are determinative of what claims remain in this action. These arguments are, first, that all claims of the Plaintiffs related to the concealment of the cash value of policies of insurance should be dismissed; second, that all claims based upon the discontinuance of the debit route system are due to be dismissed; third, that all claims involving burial insurance are barred by *res judicata* and release; fourth, that all claims involving cancer insurance are barred by *res judicata* and release; fifth, that the Plaintiffs' state law claim for money had and received is non-cognizable and runs afoul of the statute of limitations; sixth, that Plaintiffs' are incapable of stating a basis for declaratory or injunctive relief; seventh, that the Plaintiffs' claims for unjust enrichment are barred by the existence of contracts between them and Liberty National; eighth, that the Plaintiffs' tort claims of negligent hiring, supervision and retention by Liberty National of its agents and employees are not maintainable and barred by the statute of limitations; ninth, that the Plaintiffs' claims of breach of contract fail as a matter of law; and tenth, that the Plaintiffs' claims of breach of fiduciary duty are barred by the statute of limitations.

The argument on the motion for reconsideration has focused on the viability of the federal claims, both on paper and in the June 20, 2000, hearing. Further, arguments against maintenance of the state-law claims need not be addressed unless the Plaintiffs are entitled to proceed on their proposed amended complaint. It is, therefore, to Liberty National's arguments for disallowing amendment of the complaint that the Court first turns.

WHETHER THE PLAINTIFFS CAN AMEND THEIR COMPLAINT.

In *Bank v. Pitt*, 928 F.2d 1108, 1111 (11th Cir. 1991), the Eleventh Circuit Court of Appeals stated that, in response to a motion to dismiss or for judgment on the pleadings under Federal Rule of Civil Procedure 12, "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it." See also *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1308 (11th Cir. 1999). Unless a substantial reason exists to deny such a motion to amend, it should be freely granted. See *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988). This is true not only when a plaintiff requests leave to amend her complaint in the face of a motion to dismiss, but also when a plaintiff moves the court for reconsideration of an earlier dismissal and the opportunity to amend her complaint in the wake of dismissal. *Id.*[2]

Though the court is to take a permissive approach to granting amendment of a complaint in lieu of dismissal, its liberality is to be tempered by attentiveness to the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Forman v. Davis*, 371 U.S. 178, 182 (1962). See *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999). Liberty National asserts that, even were the Court to permit the Plaintiffs to file the proposed amended complaint attached to their motion, that amendment would be futile, as sufficient reasons remain for dismissal of the complaint. "'A proposed amendment is futile if the complaint, as amended,

---

[2] Liberty National, in its oral argument, appeared to relinquish any contention that the Plaintiffs should be given the opportunity to amend their complaint if such amendment would not be futile. To the extent that Liberty National seeks to have this Court deny the Plaintiffs the opportunity to amend on the grounds that in amending, the Plaintiffs should not be permitted to raise new argument or present new theories of recovery, its argument is not well taken. Restricting reconsideration and amendment solely to those cases in which the arguments and theories contained in the original complaint are adequate to support a claim runs counter to the permissiveness with which this Court is to allow amendment in the face of dismissal. This memorandum opinion instead focuses only on the arguments given by Liberty National that permitting amendment in the instant case would be "futile."

...
...

would be subject to dismissal.'" *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n.10 (11th Cir. 2000) (quoting *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). Therefore, as a matter preliminary to permitting amendment, the Court must examine the proposed amended complaint to determine whether, in spite of its revised allegations, it collapses under the weight of the same deficiencies extant in its predecessor.

As earlier noted, Liberty National offers five arguments in support of its position that any amendment of the complaint would be futile: that under the amended complaint (1) the federal (and state) claims would be barred by the statute of limitations; (2) the claims would be barred by the doctrine of repose; (3) the claims would be barred by the doctrine of laches; (4) the McCarren-Ferguson Act prohibits the section 1981 and 1982 claims of the Plaintiffs; and (5) *Burford* abstention bars this Court from considering the Plaintiffs' claims.

A. Statute of limitations.

Liberty National contends that even under the amended complaint, the statute of limitations continues to bar the Plaintiffs' claims. This is so, it argues, because each Plaintiff's claims accrued on the date that a policy was obtained by him or her and the claims are not subject to equitable tolling principles. The Plaintiffs counter that the actions of Liberty National upon which each of their claims under sections 1981 and 1982 are premised constitute a continuing violation of those statutes and as such, each of their claims continued to accrue each day from the date of the purchase of each policy up to the present. In addition, the Plaintiffs argue that even if their claims do not arise from continuing violations of sections 1981 and 1982 by Liberty National and each claim accrued at the time of the purchase of each policy, because of the fraudulent concealment of their claims by Liberty National, all of their claims were equitably tolled until their recent discovery.

While it may be the case that a federal claims accrual rule would provide a basis for concluding that the Plaintiffs' federal claims did not accrue until their actual discovery, the

Court need not and does not alter its conclusion that each of the Plaintiffs' claims came into existence at the moment when each policy of insurance was purchased in the fifties, sixties and seventies nor address for a second time the Plaintiffs' arguments attempting to convince this Court to revisit its conclusions concerning continuing violations.[3] This is so because the proposed amended complaint contains allegations supporting the existence of fraudulent concealment by Liberty National of the Plaintiffs' claims, equitably tolling the statute of limitations under § 6-2-3 of the Alabama Code of 1975.[4]

Section 6-2-3 of the Alabama Code of 1975 allows a plaintiff alleging that his claims have been fraudulently concealed from him to toll the running of the statute of limitations; "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." As such, the statute of limitations does not begin to run until the plaintiff, utilizing ordinary care, should have discovered the fraudulent concealment. *Lott v. Tarver*, 741 So.2d 394, 397 (Ala. 1999). To have the benefit of section 6-2-3, however, the plaintiff must plead with particularity the fraudulent concealment and must state the time period within which he discovered the concealment of his claim.

Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated "with particularity." This requirement applies not only to claims of fraud, but also to allegations of fraudulent concealment of claims. *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970 (5th Cir. Unit B 1981). In its earlier opinion, the Court quoted the opinion of the Eleventh Circuit Court of Appeals in *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, (11th Cir. 1997), as explicating the pleading requirements contained in Rule 9(b). In that case, the Court of

---

[3] Even were the Court to accept the Plaintiffs' argument regarding the accrual rule, the original complaint did not plead facts that would have permitted the inference that the federal claims accrued within the limitations period.

[4] Equitable tolling principles to be applied in determining whether the statute of limitations has run are those provided under relevant state law, as modified by countervailing policies of federal law. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 464-65 (1975).

Appeals stated that a complaint satisfying the requirements of Rule 9(b) must plead four things: (1) the precise statements or omissions made by the defendant, (2) the time and place of each such statement and the person responsible for the statement, (3) the content of the statements and the manner in which they misled the plaintiff, and (4) what the defendant obtained as a result of the fraud. *Id*. In determining whether a complaint satisfactorily alleges each of these four items, a district court must attend to Rule 8(a) prescription that the plaintiff need only plead a short, plain statement of the grounds on which he is entitled to relief. *Id*.

The Plaintiffs' proposed amended complaint adequately meets all four of the Rule 9(b) factors required in this Circuit. The proposed complaint describes specifically the manner used to conceal the sale of industrial insurance polices at different rates to African-Americans than to whites under the rubric of "standard" and "premium" rates. The time period in which the statements are made is also demonstrable from the complaint as the time at which the insurance polices were purchased. Liberty National is explicitly credited with authoring the misleading language used to characterize its allegedly race-biased rates. The Plaintiffs make clear that the labeling of the rates paid by them as "standard" rates rather than "African-American" rates effectively disguised from them the racially discriminatory nature of those rates. Finally, the Plaintiffs have clearly indicated that the Defendant avoided litigation of the kind presently filed with this Court by describing the insurance rates to be received by African-Americans as "standard." In addition, the Plaintiffs have alleged a relevant time frame for the discovery of the fraudulent concealment that brings them over the hurdle interposed by the statute of limitations.[5]

---

[5] While it would have been useful for each of the Plaintiffs to state a particular date on which he or she discovered the existence of his or her claims, the allegation in the complaint that the fraudulent concealment was discovered on a date nearly incumbent with the filing of the action is sufficient to comply with the pleading requirements of Federal Rules of Civil Procedure 8 & 9.

Further, the Court finds that the tolling principles alleged regarding their federal and state discrimination-type claims are inapplicable to the breach of contract claim arising from Liberty National's cessation of its weekly debit collection system. The cessation of this system would clearly be known to the Plaintiffs when it was ended. While there is no allegation as to when this system was dismantled by Liberty National, Liberty National's counsel admitted in the June 20, 2000 hearing that

B. Rule of repose.

Under Alabama law, the rule of repose is a judicially-created doctrine that provides the outer limits of time within which an action may be maintained, regardless of whether that action is barred by the statute of limitations. See *Barrett v. Wedgeworth*, 518 So.2d 1256, 1257 (Ala. 1987).[6] In this sense, Alabama's rule of repose is of a different kind than its various statutes of limitations: While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual. See *May v. Illinois Nat. Ins. Co.*, 190 F.3d 1200, 1206 (11th Cir. 1999); *Kaplan v. Shure Bros., Inc.*, 153 F.3d 413, 422 (7th Cir. 1998) and *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1487 n.2 (11th Cir. 1984). The rule's purpose "is to prevent inquiry into claims, such as this, where the evidence is obscured by the passage of time and the deaths of necessary witnesses." *Barrett*, 518 So.2d at 1257. Application of the rule of repose has only one element — the passage of twenty years time from the moment that the actions giving rise to the claim occurred — and, if that time has elapsed, no claim can be pursued. See *Tierce v. Ellis*, 624 So.2d 553, 554 (Ala. 1993). This rule clearly bars all of the Plaintiffs' state-law claims except the breach of contract claims based upon the termination of the debit routes, as the events giving rise to those claims occurred more than twenty years in the past.[7] Important for the revival of the Plaintiffs' section 1981 claims and the assertion of their section 1982 claims, however, is the

---

the debit route collection system was dismantled in 1995 or 1996. As such, the Plaintiffs will be ORDERED to amend their complaint to set forth such claim again, stating the date on which the debit collection system was dismantled, alleging such claim to escape bar by the statute of limitations. Otherwise, such claim will be DISMISSED, with prejudice.

[6] The Court is aware of two senses of the term "rule of repose." The first is applicable to all statutes that work to time-bar an action, including statutes of limitations. Cf. *Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S. 478, 490 (1980). The second sense refers only to rules that cut off all claims accruing outside of a certain time period, regardless of whether a statute of limitations bar exists. It is this second sense of a rule of repose to which the discussion of the Court pertains.

[7] As such, those claims will be DISMISSED, with prejudice.

issue of whether, like Alabama's statute of limitations, Alabama's judicially-created rule of repose is applicable to those federal claims.

The Court concludes that Alabama's common-law rule of repose is not applicable to the federal law claims of the Plaintiffs. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. at 462, as later amended by *Wilson v. Garcia*, 471 U.S. 261 (1985), and *Owens v. Okure*, 488 U.S. 235 (1989), stated that the rule that the state statute of limitations for general or residual personal injury tort claims is applicable to claims brought pursuant to the federal civil rights acts, was grounded on the premise that section 1981 lacks a statute of limitations, an essential feature of any right of action, federal or state. By contrast, blanket repose rules barring all federal claims after a period of time has passed do not exist to bar federal actions; such rules appear sparingly among federal statutes. Failure to create a rule of repose concerning a particular statute is not an invitation to apply a state law rule of repose in its absence, as such rules do not form a regular feature of the landscape in the prosecution of federal rights.[8]

## C. Doctrine of laches.

The defendant next asserts that the state-law doctrine of laches bars the Plaintiffs' federal and state law claims. Assuming that the doctrine of laches imposed by state law is applicable to the federal claims generally, the doctrine would still not bar those claims, as the Plaintiffs have alleged facts demonstrating that any delay by them in filing their claims was excusable. See *Ex parte Grubbs*, 542 So.2d 927, 929 (Ala. 1989) (stating that to show undue delay, it must be the case that the plaintiff "delayed in asserting his right or claim, that his delay was [inexcusable], and that his delay caused the [defendant] undue prejudice").

---

[8] Liberty National has not shown that a rule of repose such as that existing in the State of Alabama exists in a majority of states. The Court is of the opinion that Alabama and its citizens should not be able to opt-out of federal claims from which other States and their citizens cannot opt-out merely because Alabama has put in place a rule terminating all state-law claims after a certain number of years.

D. McCarran-Ferguson Act.

The Defendant next argues that the McCarran-Ferguson Act bars the type of section 1981 and section 1982 claims at issue in this suit. Section 2 of the McCarran-Feguson Act provides that "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. ..." 15 U.S.C. § 1012(b). "The McCarran-Ferguson Act thus precludes application of a federal statute in face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). See *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1098 (10th Cir. 1999) ("the Act bars the application of a federal statute if (1) the federal statute does not specifically relate to the business of insurance; (2) a state statute has been enacted for the purpose of regulating the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute"). There is no question here that neither section 1981 nor section 1982 of Title 28 specifically relates to the "business of insurance," as considered by the Act. See *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 497 (1993), and *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982). Further, Liberty National contends, Alabama has enacted a statute related to the business of insurance that proscribes what it terms "unfair discrimination" in the provision of such insurance:

> (a) No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of such contract.
> (b) No person shall make or permit any unfair discrimination between amount of premium, policy fees or rates charged for any policy or contract of disability insurance, or in the benefits payable thereunder, or in any of the terms or conditions of such contract or in any other manner whatever.

Ala. Code § 27-12-11.

Therefore, the relevant question before this Court is whether the section 1981 and 1982 claims that the Plaintiffs seek to bring would "invalidate, impair, or supersede" the State statute. Interpreting what the Act meant by "invalidate, impair, or supercede", the Supreme Court, in *Forsyth*, held that "[t]he following formulation seems to us to capture that meaning and to construe, most sensibly, the text of § 2(b): *When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.*" 525 U.S. at 310 (emphasis added). This Court concludes that the type of discrimination claims brought by the Plaintiffs in this action do not conflict with or frustrate Alabama's scheme of insurance regulation. Rather, the application of the civil rights laws in this context merely bolsters the State's anti-discrimination policy, set forth in § 27-12-11 of the Alabama Code of 1975. See also *Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 421 (4th Cir. 1984). As such, the Plaintiffs claims are not reverse preempted by state insurance law under the McCarran-Ferguson Act.

E. *Burford* abstention.

Liberty National finally asserts that the federal claims should be dismissed under the *Burford* abstention doctrine. In *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 1999), the Eleventh Circuit Court of Appeals provided the following explanation of *Burford* abstention:

> The decision that gave Burford abstention its name is *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). In a later case, the Supreme Court summarized Burford abstention as follows:
>> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and

> in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.
>
> *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (citations and internal quotations omitted). The purpose of Burford abstention is to "protect[ ] complex state administrative processes from undue federal interference. . . ." *Id*. at 362.

However, a district court should be hesitant to apply the doctrine of *Burford* abstention to a case, as it is "'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.'" *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1998), *on remand from City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997). The central concern of *Burford* abstention is to prevent federal courts "from deciding unsettled questions of state law that relate to a complex state regulatory scheme." *Id*. at 361.

Here abstention is not appropriate. First, any relief potentially ordered by this Court would not be "'in any way entangled in a skein of state law that must be untangled before the federal case can proceed,'" *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. at 361 (quoting *McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 674 (1963)). The Court, prior to determining whether Liberty National's rate-setting practices violated sections 1981 and 1982 of Title 28, need not examine their relation to state law. Nor would federal action in this case upset State administrative efforts to provide a uniform scheme of the provision of insurance. See *id*. There is no state administrative action being challenged in the case, but rather the alleged decision of the Defendant in this action to price its insurance products in a discriminatory fashion.

## Conclusion

This Court finds that amendment of the complaint by the Plaintiffs would not be futile, not withstanding Defendant's challenge at the present stage of this litigation. Accordingly, the Court will GRANT the motion to alter or amend the judgment and to permit amendment of the complaint to state claims under sections 1981 and 1982. This amendment shall be effected on or before July 14, 2000. Further, if the Plaintiffs can assert facts demonstrating that their breach of contract claims arising out of the discontinuance of the debit route system for collecting premiums are timely, they may amend their complaint to allege such claims. Failure to appropriately re-plead the breach of contract claims will result in dismissal of those claims. Finally, upon reconsideration, the Court finds that the remaining claims of the Plaintiffs, while not barred by the statute of limitations, are barred by Alabama's rule of repose. As such, they are due to be DISMISSED, with prejudice.

If either party desires, the Court will enter a final judgment on the dismissed claims under Federal Rule of Civil Procedure 54(b). A party seeking the entry of final judgment on those claims shall file a motion to that effect with the Court on or before July 14, 2000.

DONE and ORDERED this 3rd day of July, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE